UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-60249-DSL

UNITED STATES OF AMERICA,

*Plaintiff*,

*v.*

CHELSEA MICHELLE ANN COX,

*Defendant*.
________________________________/

**DEFENDANT'S SUPPLEMENT IN SUPPORT OF MOTION TO DISMISS BASED ON UNCONSTITUTIONALITY OF 18 U.S.C. § 611**

COMES NOW Defendant Chelsea Michelle Ann Cox, by and through undersigned counsel, and submits this Supplemental Reply as per order of the Court.

The government in its most recent brief has advanced two arguments to justify Congress's authority to enact 18 U.S.C. § 611, and neither passes muster. First, the government continues to hew to its position that the non-precedential decision in *Oregon v. Mitchell*, 400 U.S. 112 (1970) controls this case. That is wrong. As some simple vote counting makes clear, five Justices in *Mitchell* concluded that the Elections Clause did *not* allow Congress to set a voter qualification, and five Justices concluded that the Fourteenth Amendment did *not* allow Congress to set the voter qualification at issue. The government does not even attempt to grapple with the fact that there was not a majority opinion in *Mitchell* commanding five votes.

The Supreme Court has already explained the significance of that vote breakdown: the absence of a majority opinion based on five votes with the same rationale means that Justice Black's opinion lacked "a majority rationale" and is not precedential. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 16 n. 8 (2013). The government is of course correct that it is the sole prerogative of the Supreme Court to overrule its precedent—but there is no precedent in *Mitchell* to overrule, given the absence of a majority rationale. Tellingly, the government does not acknowledge the vote breakdown in *Mitchell*, nor does it acknowledge *Inter Tribal Council*'s eighth footnote.

The government also argues that the Uniformed and Overseas Citizens Absentee Voting Act is a voter qualification, showing Congress's affirmative power to create them. That is also wrong. That Act doesn't create a new category of people who can or cannot vote; it simply dictates that the States *must* accept ballots timely sent by soldiers and citizens overseas. Thus, the Uniformed and Overseas Citizens Absentee Voting Act regulates the *how* of voting rather than the question of *who* can vote, and so this statute is a procedural regulation that is plainly supported by the Elections Clause. *See, e.g.*, *Smiley v. Holm*, 285 U.S. 355, 366 (1932) (explaining that the "comprehensive words" of the Elections Clause "embrace authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices … supervision of voting, protection of voters, [and] … counting of votes").

Regarding the recent decision in *Watson v. Republican National Committee*, 609 U.S. ___ (2026), it adds nothing to the analysis. As the *Watson* Court took pains to note, that decision was "not a case about the Constitution" and the Court did "not consider the

scope of Congress's authority to regulate federal elections." *Id.,* 2026 WL 1855462, at *5. But even though *Watson* has no constitutional holding that can help guide this Court, its discussion of absentee ballot laws vitiates the government's reliance on it: even a cursory skim of the opinion shows that it treats absentee-voting practices and ballot-delivery methods as paradigmatic Elections Clause "Manner" subjects—indeed, the opinion begins with a citation to the Elections Clause. *See generally id.*

Turning to the government's second argument, it invokes 52 U.S.C. § 30121(a) as an analogous statute, and that is likewise a nonstarter. In the defense's reply, Cox argued that there was no other law on the books that: 1) wasn't justified by any other enumerated power; and 2) targeted aliens without any nexus to the immigration process. ECF No. 34 at 14. The government argues that 52 U.S.C. § 30121(a) fits the bill because it has no relation to traditional immigration matters like entry, registration, and removal, but rather bars noncitizens from making campaign contributions. The government is right that the law targets aliens in a matter unrelated to the immigration process, but the government is wrong that no other enumerated power allows the law. Unlike a voter qualification, laws regulating campaign contributions are within the Elections Clause.

Citing to the Elections Clause, the Supreme Court has long recognized that Congress has the authority to regulate contributions to political campaigns. *See Buckley v. Valeo*, 424 U.S. 1, 13 (1976) ("The constitutional power of Congress to regulate federal elections is well established and is not questioned by any of the parties in this case"). The main limitation on that authority comes from the Bill of Rights; Congress may not restrict campaign contributions in a manner that infringes on First Amendment rights. *See*

*Citizens United v. FEC*, 558 U.S. 310 (2010). Thus, the Elections Clause provides the enumerated power justifying 52 U.S.C. § 30121(a), and its disparate treatment of aliens merely has to satisfy rational-basis review to pass constitutional muster. *See Mathews v. Diaz*, 426 U.S. 67 (1976). That is because federal statutes that draw lines based on alienage do not trigger heightened scrutiny, unlike state laws of the same ilk. *See id.*

For this reason, any attempt to analogize 18 U.S.C. § 611 to 52 U.S.C. § 30121(a) fails out of the gate. The Elections Clause justifies the latter but not the former; for the reasons previously provided in Cox's motion to dismiss and supporting briefing, the Elections Clause does not allow Congress to establish a voter qualification, and the Voter Qualification Clauses reserve that power exclusively to the States. Put somewhat differently, an enumerated power other than the immigration power justifies § 30121(a); no enumerated power justifies § 611, let alone overcomes the affirmative restraint on Congress's power established by the Voter Qualification Clauses.

Respectfully submitted,

BRUCE L. UDOLF, P.A.
*Attorneys for the Defendant*

*/s/ Bruce L. Udolf*

599 SW Second Avenue
Fort Lauderdale, FL 33301
Tel: 954-415-2260
budolf@bruceudolf.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was served on all counsel of record or pro se parties via the Court's CM/ECF notification to those parties who are registered CM/ECF participants in this case, on this 15th day of July, 2026.

*/s/ Bruce L. Udolf*
BRUCE L. UDOLF, ESQ.